[Cite as *State v. Wells*, 2021-Ohio-1691.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 5-20-36

    v.

TREG E. WELLS, JR.,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2019 CR 463

Judgment Affirmed

Date of Decision: May 17, 2021

APPEARANCES:

    *Michael H. Stahl* for Appellant

    *Phillip A. Riegle* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Treg Wells ("Wells"), brings this appeal from the November 5, 2020 judgment of the Hancock County Common Pleas Court sentencing him to a mandatory nine-month prison term after Wells pled guilty to, and was convicted of, domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree due to the fact that the victim was pregnant and Wells knew she was pregnant. On appeal, Wells argues that his plea was not knowing, intelligent, and voluntary due to Wells receiving ineffective assistance of counsel

*Background*

{¶2} On October 24, 2019, Wells was indicted for domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree due to the fact that the victim was pregnant at the time of the offense and Wells knew that she was pregnant. The Hancock County Public Defender was appointed to represent Wells and he originally pled not guilty.

{¶3} Over the ensuing months, multiple pre-trial hearings were held wherein Wells was represented by his appointed counsel. On February 26, 2020, this case was transferred to the docket of a different trial judge. At the time of the transfer, Wells expressed that he may retain counsel.

{¶4} On March 16, 2020, a pretrial hearing was held before the newly assigned trial judge. If the hearing was held on the record, no transcript was

provided. However, a journal entry was filed following the hearing and it stated that a plea offer had been conveyed to Wells and a resolution had been reached between the parties. As a result, the matter was scheduled for a "plea hearing."

{¶5} On May 14, 2020, the matter proceeded to what was originally scheduled as a plea hearing but the hearing was continued so that corrections could be made to the paperwork and so that Wells' appointed counsel could speak to him further.

{¶6} A week later, on May 21, 2020, the matter reconvened. At that time, Wells was not prepared to enter into the negotiated plea agreement despite previous indications. Wells informed the trial court that he needed additional time to speak with his attorney. The case was continued for a final pretrial hearing on August 3, 2020, with a jury trial being set for August 31, 2020.

{¶7} The "final" pretrial hearing was held on August 3, 2020. The state again made a plea offer to Wells, but that offer was rejected. According to a journal entry filed on the matter, the plea offer that was made to Wells expired that day, August 3, 2020.

{¶8} On August 21, 2020, Wells, acting pro se, filed a "notice" with the trial court that he felt the legal process in this case was violating his rights. He claimed that he had not seen discovery and that his appointed attorney had not provided

effective assistance of counsel. He claimed that he had contacted a new attorney about potentially representing him.

{¶9} On August 24, 2020, Wells' appointed attorney filed a motion to withdraw, stating that he had read Wells' "notice," that he had provided Wells with all the discovery in this matter, and that he had tried to have discussions with Wells numerous times but had not been able to reach him.

{¶10} On August 28, 2020, a hearing was held on appointed counsel's motion to withdraw. At the hearing, Wells' appointed attorney reiterated that, contrary to the representations made by Wells, discovery had been provided to Wells, and that Wells had not been cooperating with his attorney. Further, Wells' appointed counsel stated that he had done a lot of work in preparation for trial and that he had done as best as he could without his client's participation. In addition, appointed counsel noted that on at least two occasions Wells had stated he would accept a plea offer to a reduced charge of a first degree misdemeanor, but when they came back to court both times Wells "backed out" of the deal.

{¶11} Wells stated that he did not feel like he could communicate with his current appointed attorney. In addition, he stated that he had been in contact with another attorney that he was hoping to retain. The trial court was made aware that Wells wanted a continuance to give counsel that he would retain time to prepare. The state was opposed to a continuance of the scheduled trial date.

{¶12} The trial court ultimately denied Wells' request to dismiss his court-appointed counsel, finding that Wells was not entitled to the appointed counsel of his choice. The trial court did not restrict Wells from *hiring* the counsel of his choice. However, the trial court denied his request for a continuance. The trial court reasoned that it had been over six months since Wells had first indicated that he *might* retain an attorney but he had still yet to do so. Wells had no explanation for the "extreme" delay in procuring counsel of his choice. Further, the trial court was persuaded by the fact that Wells failed to maintain contact with his appointed counsel and that he then wanted to change counsel at the "11th hour." Finally, the trial court stated that the judge's office had been in contact with the attorney Wells was seeking to retain. That attorney was notified that a continuance of the trial date would not be granted, so if the retained attorney was going to represent Wells, he had to be prepared to go to trial on August 31, 2020, as scheduled.

{¶13} Despite the trial court's determination that the trial date would not be moved, Wells retained counsel. The record indicates that in the days prior to the scheduled trial date, retained counsel went over all the discovery with Wells and they discussed the case thoroughly.

{¶14} On the date of the scheduled trial, August 31, 2020, a plea agreement was reached wherein Wells agreed to plead guilty to the charge as indicted, and in exchange the State agreed to recommend a ten-month prison term if Wells did not

have any legal violations prior to the sentencing hearing. This was not an agreed sentence, however, as Wells was free to argue for a lesser sentence than ten months. Nevertheless, due to the nature of the charge, a prison term was mandatory by statute, so Wells was not eligible for community control.

{¶15} A lengthy Crim.R. 11 hearing was held, wherein Wells repeatedly expressed that he understood the nature and consequences of his plea. Wells also indicated that he did not need more time to discuss the matter with his attorney, and that he was satisfied with his attorney's representation. The trial court determined that Wells was entering a knowing, intelligent, and voluntary plea. He was found guilty as charged.

{¶16} On November 2, 2020, the matter proceeded to sentencing. At the sentencing hearing, the state noted that Wells had tested positive for THC; nevertheless, the state indicated it would still recommend the ten-month prison term per the plea agreement. The state felt the sentence was appropriate because, *inter alia*, Wells had caused harm to the mother of his child while she was pregnant, as shown in photographs that were introduced into evidence.

{¶17} Wells' retained counsel provided a statement in mitigation of sentence, noting that it was unfortunate that Wells did not accept the offer of a misdemeanor from the state when it was available.

{¶18} Wells then made a statement on his own behalf, staying that he felt like his rights were being violated, citing various state and federal constitutional amendments. He felt that he had the "right to follow God Almighty the way I dictate." (Nov. 2, 2020, Tr. at 17). Based on Wells' statement, the trial court asked if Wells needed some time to speak with his attorney, and Wells indicated that he did. Court recessed, then resumed, with Wells' attorney adding further statements in mitigation. Wells stated there were still things he had "doubts and questions about," but he did not believe he was going to get them answered that day. "[O]ther than that, I think we're good." (*Id*. at 22).

{¶19} The trial court proceeded to sentence Wells to a mandatory nine-month prison term. A judgment entry memorializing Wells' conviction and sentence was filed November 5, 2020. It is from this judgment that he now appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The trial court erred, and Mr. Wells was denied his right to counsel under the Ohio and United States Constitutions when it interpreted Mr. Wells'** *termination* [Emphasis sic.] **of his appointed counsel with a request for appointed counsel of choice which resulted in an uncounseled plea which was not knowingly, voluntarily or intelligently entered[.]**

{¶20} In his assignment of error, Wells argues that he received ineffective assistance of counsel such that his guilty plea was rendered invalid. More specifically, Wells argues that his newly retained counsel was ineffective for not

searching the record and submitting a "strong argument for a continuance." He argues that since some discovery was still being exchanged ten days prior to the trial date, a continuance would have been granted had new counsel made a proper argument. Further, Wells contends that prejudice is evident in this matter because he pled guilty to a felony when he had previously been offered a deal by the state to plead guilty to the reduced charge of a misdemeanor.

*Standard of Review*

{¶21} " 'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that the counsel's representation fell below an objective standard of reasonableness.' " *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002-Ohio-350, *quoting Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052 (1984). Additionally, " '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' " *Id.* quoting *Id.* at 694; *see also*, *State v. Bradley*, 42 Ohio St.3d 136, 137 (1989). The failure to make either showing defeats a claim of ineffective assistance of counsel. *Bradley* at 143 quoting *Strickland* at 697 ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). In analyzing a claim for ineffective assistance of counsel, this court's scrutiny of counsel's

performance must be highly deferential, with a " 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id*. at 142 quoting *Strickland* at 687-88.

*Analysis*

**{¶22}** Generally, " 'A plea of guilty waives a claim of ineffective assistance of counsel, *except to the extent the defects complained of caused the plea to be less than knowingly and voluntary*.' " (Emphasis sic.) *State v. Keller*, 3d Dist. Wyandot No. 16-18-03, 2018-Ohio-5062, ¶ 7, citing *State v. Street,* 3d Dist. Hancock No. 5-98-09, 1998 WL 682284, *2. In this case, Wells does not make a cogent argument as to how his plea was less than knowing, intelligent, and voluntary, which would waive his ineffective assistance claim for purposes of appeal. Wells seems to simply lament the fact that he did not take the previously offered plea deal—a plea deal that had the specific expiration date of August 3, 2020. Failure to request a continuance does not implicate the knowing, intelligent, and voluntary nature of a plea. Because Wells does not show how the alleged ineffective assistance in this case affected the voluntary and knowing nature of his plea, his argument is waived for purposes of appeal. *State v. Ramsey*, 3d Dist. Marion No. 9-10-55, 2012-Ohio-134, ¶ 18.

**{¶23}** Nevertheless, even had he not waived his argument, Wells' ineffective assistance claim is unavailing. At the thorough and lengthy Crim.R. 11 plea hearing in this case, Wells repeatedly expressed that he had enough time to speak with his

attorney,[1] that he had reviewed the case, and that he was aware of the potential punishments and consequences. There was even a discussion about the fact that there were previous plea offers in this case and Wells was asked whether he understood the nature of the current plea he was entering.

{¶24} Moreover, the plea hearing expressly clarified that Wells would be sentenced to a mandatory prison term of at least six months, and that he would not be eligible for community control. Further, Wells was made aware that he could have had a trial the day of the plea hearing if he wished. A jury was waiting to be selected when he entered his plea. Even with all of this in mind, Wells *still* elected to enter his guilty plea. Wells repeatedly stated that he understood what he was doing, that he was satisfied with his attorney, and that he was aware of the all of the rights he was waving. Thus the Crim.R. 11 hearing affirmatively establishes a knowing, intelligent, and voluntary plea.[2]

{¶25} Although Wells may now contend that his retained attorney should have sought and received a continuance of the trial date, the trial court had already denied a continuance three days prior and the trial court made it clear that if Wells retained a new attorney, the new attorney would have to be ready to proceed to trial on the specified date. Despite this warning, Wells retained counsel, removing the

---

[1] We note that the "statement" of Wells' assignment of error calls his plea "uncounseled." This is facially contrary to the record.

[2] Wells does not make any argument that the Crim.R. 11 hearing was somehow deficient.

appointed attorney who had indicated he had been preparing for the case in Wells' absence because Wells would not contact his appointed counsel. The record indicates that newly retained counsel went over all of the discovery with Wells on the weekend before the trial. At the plea hearing, retained counsel stated that he had "probably talked more [with Wells] than he talked with his prior counsel. We did review all the discovery and have gone over everything, and I believe I have answered all of his questions." (Aug. 31, 2020, Tr. at 7). Wells agreed with that statement.

{¶26} The record is wholly devoid of any indication that Wells' plea was anything other than knowing, intelligent, and voluntary. Wells' disappointment that he did not keep in contact with his original attorney so that he could take a deal offered earlier in this case does not render his retained counsel ineffective. In fact, there is no indication that the state would have agreed to a different plea deal, particularly since the state was prepared to go to trial on the date the plea was entered. *See State v. Conley*, 3d Dist. Marion No. 9-16-10, 2016-Ohio-8408, ¶ 13. Furthermore, while Wells expressed that his constitutional rights were being violated in this matter, the record does not establish any deprivation of constitutional rights.[3] For all of these reasons, Wells' assignment of error is overruled.

---

[3] To the extent that Wells would argue that there were issues outside the record that would establish some purported deprivation of rights, those are issues more properly raised through postconviction remedies than a direct appeal. *State v. Duncan*, 8th Dist. Cuyahoga No. 109310, 2020-Ohio-6740, ¶ 24.

*Conclusion*

**{¶27}** For the foregoing reasons, Wells' assignment of error is overruled and the judgment and sentence of the Hancock County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**